BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)
JAMES M. DAVIS (301636)
ADAM BUCCI (327312)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com
jdavis@bholaw.com
abucci@bholaw.com

LAW OFFICE OF D. JOSHUA STAUB
D. JOSHUA STAUB (170568)
JAMES C. D. CARR (308118)
13015 W Washington Blvd.
Los Angeles, CA 90066
Tel: 424/216-1776
josh@djoshuastaub.com
james@carrlawgrp.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE**

SCOTT MOREE on behalf of himself, those similarly situated and the general public,

Plaintiff,

v.

VALVOLINE INC,; and VALVOLINE INSTANT OIL CHANGE FRANCHISING, INC.,

Defendants.

Case No. 5:25-cv-02469-JGB-DTB

**CLASS ACTION**

**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**

1. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*); and**
2. **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750, *et seq.*)**

District Judge Jesus G. Bernal
Courtroom 1, 2nd Floor
Magistrate Judge David T. Bristow
Courtroom 4, 3rd Floor

Complaint Filed: June 5, 2025
Removal: September 18, 2025
Trial Date: TBD

**DEMAND FOR JURY TRIAL**

BLOOD HURST & O' REARDON, LLP

Plaintiff Laura Elise Delapaz ("Plaintiff"), individually, and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to herself and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this class action complaint against Defendant Valvoline Inc. and Valvoline Instant Oil Change Franchising, Inc. (collectively, "Defendant" or "Valvoline") and alleges as follows:

## INTRODUCTION

1. Long ago, vehicle manufacturers recommended changing engine oil every 3,000 miles or every three months. While that advice was once valid, it has long been obsolete by advancements in automotive engineering and engine oil, including synthetic oil and additives to conventional oil. Yet Valvoline, one of the nation's largest oil change service providers, continues to promote and exploit this outdated standard to consumers across the country in connection with its Full-Service Oil Change. Through its uniform practice of applying windshield stickers that direct customers to return after 3,000 miles or three months (the "3,000 mile / 3-Month Representation")—regardless of the vehicle make, model, model year, mileage or oil type—Valvoline systematically misrepresents the need for oil change services.

2. Valvoline's business practice not only ignores well-established manufacturer recommendations and advancements in oil performance, it also deceives consumers into purchasing services and products they do not need.

3. Valvoline's 3,000 mile / 3-Month Representation is not an innocuous reminder—it is a calculated marketing strategy that preys on consumer trust in the company's expertise. By falsely presenting the 3,000 mile / 3 month standard as necessary for engine maintenance, Valvoline drives consumers to spend more money on services sooner and more frequently than warranted.

4. Plaintiff Delapaz brings this action against Valvoline on behalf of herself and seeks, among other relief, damages, restitution, and injunctive relief on behalf of

herself, the general public (regarding injunctive relief), and the following class defined as:

> All persons who paid for Defendants' Full-Service Oil Change in the State of California from the beginning of the applicable limitations period until the date notice is provided to the Class.

## JURISDICTION AND VENUE

5. This action was initially filed in the Superior Court for the State of California for the County of Riverside, Case No. CVRI2503072. Defendants removed the case to this Court alleging jurisdiction pursuant to 28 U.S.C. § 1332(d).

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

7. This Court has personal jurisdiction over Defendants because Defendants conduct business in California. Defendants have marketed, advertised, distributed, and sold oil change services in California, rendering exercise of jurisdiction by California courts permissible.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred because Plaintiff purchased Defendants' oil change services in this judicial district.

## THE PARTIES

**Plaintiff**

9. Plaintiff Laura Delapaz is a resident of the State of California. While residing in Encino, California, Plaintiff Delapaz visited a Valvoline Instant Oil Change franchise five times between approximately March 2024 and June 2025 to have the engine oil changed for her vehicle.

10. After the Full-Service Oil Change was completed each time and in accordance with company directives, an employee of Valvoline attached an oil change

sticker to the inside of Plaintiff Delapaz's vehicle's windshield indicating the oil type used and that the next oil change service would be due in three months or in 3,000 miles.

11. In reliance on Valvoline's 3,000 mile / 3-Month Representation, Plaintiff Delapaz returned to the Valvoline Instant Oil Change multiple times between March 2024 and June 2025 to have her vehicle's oil changed at approximately 3,000 mile intervals.

12. By purchasing the Full-Service Oil Change at Valvoline's 3,000 mile recommendation, Plaintiff Delapaz suffered injury-in-fact and lost money. Synthetic engine oil – and even conventional engine oil – does not need to be changed until at least 5,000 miles have been driven, and often far more. Had Plaintiff Delapaz known the truth about Valvoline's misrepresentations regarding when the next oil change was due, Plaintiff Delapaz would have waited longer to have her engine oil changed.

**Defendants**

13. Defendant Valvoline, Inc, is a retail automotive services company that is incorporated in Kentucky and headquartered/with its principal place of business in Kentucky. It licenses the name for a number of Valvoline-labeled automotive oil, additives, and lubricants. It also owns the Valvoline Instant Oil Change Franchising, Inc., Great Canadian Oil Change and Valvoline Express Care car repair chains. As of 2024, it is the second largest oil change service provider in the United States with a 10% market share and over 2,000 locations. In 2024 Valvoline had $3.1 billion in system-wide store sales and $367.1 million in income. Nearly half of Valvoline's locations are company-owned; the other half are franchise-operated. "Valvoline" is a historied oil company founded in 1866, known for its cutting-edge innovations. The global lubricants products business was sold in 2022 and is now owned by Saudi Aramco.

14. Defendant Valvoline Instant Oil Change Franchising, Inc., is a corporation that is incorporated in Delaware and headquartered with its principal

place of business in Kentucky. It provides preventive maintenance services for many different types of automobiles. Its services include oil changes, antifreeze changes, differential fluid changes, batteries, belts, fuel system cleaning service, lights, wipers and transmission fluid changes.

**Vicarious Liability for Acts of Franchisees**

15. Valvoline Inc. is vicariously liable for the acts and omissions of its Valvoline Instant Oil Change franchisee owners and operators, as Plaintiff alleges that Valvoline Inc. retains complete or substantial control at all relevant times over each franchisee's operations. This control includes but is not limited to: operations and branding[1]; training and supervision[2]; mandated use of proprietary software and point-of-sale system (the "SuperPro" or equivalent), which is used for billing, reporting, and service tracking[3]; pricing, advertising, and service restrictions[4]; store design and size[5]; and requiring franchisees to honor Valvoline Inc.'s customer guarantees.[6] This level of control creates an agency relationship between Valvoline Inc. and its franchisees, rendering Defendants' responsible for the franchisees' actions under the legal doctrine of respondeat superior. The Valvoline Instant Oil Change franchisees' conduct in question, therefore, is directly attributable to Valvoline Inc., and Valvoline Inc. should be held accountable for any resulting harm to Plaintiff and Class members.

**Agency Liability for Acts of Franchisees**

16. Valvoline Inc.'s liability for the actions of its franchisees encompasses direct liability under principles of agency law.

17. **Agency by Agreement (express and implied):** Valvoline Inc. and its Valvoline Instant Oil Change franchisees are engaged in an actual agency relationship. The franchise agreement creates a principal-agent dynamic, where

---

[1] Ex. C (Valvoline Instant Oil Change Franchise Disclosure Document), at p. 7.
[2] *Id.*, at p. 33.
[3] *Id.*, at pp. 12 and 22.
[4] *Id.*, at pp. 14-15.
[5] *Id.*, at pp. 7 and 22.
[6] *Id.*, at p. 18.



BLOOD HURST & O' REARDON, LLP
00236480

Valvoline Inc., as the principal, delegates the operation of its Valvoline Instant Oil Change to its franchisees, as its agents. Valvoline Inc. exercises significant control over its franchisees, dictating not only the "what" of their operations but also the "how."[7] This includes details like its employee training, customer interaction, its computer systems, its point-of-sale operating systems, and its marketing and advertising campaigns.[8] Such comprehensive control creates an actual agency relationship, where the franchisee acts as Valvoline Inc.'s agent, carrying out Valvoline Inc.'s business under its direction and for its benefit. Valvoline Inc. is, therefore, directly liable for any torts or contractual breaches committed by its franchisees within the scope of this agency relationship. Additionally, the parties' course of dealing, including regular communication, oversight, and direction from Valvoline Inc. to its franchisees, establishes an implied agency relationship.

18. **Agency by Ratification:** Valvoline Inc. ratified the actions of its franchisees by accepting the benefits of their conduct. Valvoline Inc. directly benefits from the sales and profits generated by its franchisees, including initial investments, initial franchisee fees, ongoing fees, and ad royalty fees.[9]

19. **Agency by Estoppel:** Valvoline Inc. created an agency relationship by estoppel through its representations and conduct. Valvoline Inc. held out its franchisees as its agents through its marketing and advertising materials, signage, and website, leading the public to reasonably believe that the franchisees were acting on behalf of Valvoline Inc.as alleged herein. This reliance by the public created an agency relationship by estoppel, rendering Valvoline Inc. liable for the acts and omissions of its franchisees.

20. **Actual Authority (express and implied):** At all relevant times, Plaintiff alleges that Valvoline Inc. provided the factual authority, both express and implied,

---

[7] *See* ¶ 15, *supra*.
[8] *See* ¶ 15, *supra*.
[9] Ex. C, at pp. 12–17.



BLOOD HURST & O' REARDON, LLP

00236480

to the applicable franchisee operators, to advertise, market, and solicit for sale the matters in dispute in this Complaint causing harm to Plaintiff. This authority is manifested in the detailed operational manuals, marketing and advertising campaigns, stringent quality control standards, mandatory training programs, and regular inspections that Valvoline Inc. imposes on its franchisees. These mechanisms demonstrate an express grant of authority, explicitly delineating the parameters within which Valvoline Inc.'s franchisees must operate. Moreover, the written franchise agreement itself, coupled with the ongoing supervision and support provided by Valvoline Inc., creates an implied authority, where franchisees reasonably believe they are acting in accordance with Valvoline Inc.'s wishes and expectations.

21. **Apparent Authority:** Furthermore, Valvoline Inc., through its extensive advertising, uniform branding, use of point-of-sale systems and software, and centralized marketing efforts, creates an apparent authority, leading consumers to reasonably believe that all Valvoline Inc. franchisees, whether corporate-owned or franchised, adhere to the same standards of quality and service. This carefully cultivated image fosters a reliance on Valvoline Inc.'s reputation, thereby establishing an estoppel, preventing Valvoline Inc. from disavowing responsibility for the actions of its franchisees. Consumers, having been induced to patronize Valvoline Inc.'s franchisees based on this representation, are entitled to hold Valvoline Inc. accountable for these standards, regardless of whether the franchisee is directly owned or operated by a Valvoline Inc. franchisee.

## FACTUAL BACKGROUND

***Engine Oil***

22. Engine oil, also known as motor oil or engine lubricant, is a substance used to reduce friction and wear in internal combustion engines. It is primarily made of base oils blended with additives such as anti-wear agents, detergents, dispersants, and viscosity index improvers.

23. Engine oil's main functions include lubricating moving parts to minimize wear; cleaning the engine by preventing sludge and varnish buildup; neutralizing acids formed from fuel combustion and oil oxidation; sealing piston rings for better engine efficiency; and cooling the engine by carrying heat away from critical components.

24. The two main vehicle parts needing oil are the pistons—so that they can slide smoothly within their cylinders—and the bearings, which allow parts like the crankshaft and camshafts to rotate freely.[10] In most vehicles, oil is drawn from the oil pan by the oil pump, passed through the oil filter to remove any grit, and then delivered under high pressure onto the bearings and the cylinder walls.[11] From there, the oil drains back into the sump, where it is collected again and the cycle repeats.[12]

25. There are three kinds of engine oil: conventional (also known as mineral), semi-synthetic (also known as synthetic blend), and full synthetic. Each of these engine oils has a different composition: the base is either refined crude petroleum or polymers manufactured in the laboratory.[13]

26. Conventional oil is refined from crude oil and contains molecules of varying sizes, which affects its viscosity and performance at high temperatures.[14] After extraction, the crude oil is transported to a refinery where it undergoes multiple refining processes to eliminate impurities. The resulting oil is primarily composed of hydrocarbons—both oxygenated and non-oxygenated—though it may also contain small amounts of sulfur, nitrogen, and other compounds.[15] To enhance its

---

[10] Marshall Brain and Kristen Hall-Geisler, *How Car Engines Work*, How Stuff Works, April 5, 2000, https://auto.howstuffworks.com/engine.htm

[11] *Id.*

[12] *Id.*

[13] *What is Engine Oil Composed of?*, TotalEnergies, https://services.us.totalenergies.com/engine-oil-guides/what-is-engine-oil-composed-of

[14] Benjamin Hunting, *The Difference Between Conventional and Synthetic Oil*, October 20, 2022, https://www.capitalone.com/cars/learn/managing-your-money-wisely/the-difference-between-conventional-and-synthetic-oil/1835?utm_source=chatgpt.com

[15] *Id.*



BLOOD HURST & O' REARDON, LLP

performance, various additives are blended into the refined product, creating what is known as conventional engine oil.[16]

27. Synthetic oil is chemically engineered in a laboratory or derived from highly refined petroleum.[17] Its production involves a more advanced refining process than that of conventional oil, including the modification of hydrocarbon molecular structures.[18] Like conventional oil, synthetic oil is blended with various additives to enhance its properties.[19] Due to its refined composition, synthetic engine oil is considered a premium product—purer and more capable of delivering superior performance compared to mineral oil.[20]

28. Synthetic oil molecules are designed to have a uniform size, which means their ability to lubricate is stable and reliable at both cold and hot engine temperatures, flowing more easily throughout an engine and improving its level of protection. It also resists engine heat and stress longer than conventional oil.

29. Synthetic blend engine oil blends synthetic and mineral oil.

30. Long ago, it was common practice to change engine oil every 3,000 miles. However, that is no longer true for cars manufactured during the past two decades. Engine oil and engine technology, introducing tighter tolerances (the gap between metal moving parts), have improved to the point where the rule of thumb is closer to between 7,500 and 10,000 miles or more.

***Valvoline Holds Itself Out as Experts on Engine Oil and Vehicle Maintenance***

31. Aside from its promise to change engine oil in 15 minutes, Valvoline presents itself as an authority – if not the leader – in vehicle expertise and thorough vehicle maintenance. To further reinforce its credibility, Valvoline highlights the

---

16 *Id.*
17 *Id.*
18 *Id.*
19 *Id.*
20 *Id.*



BLOOD HURST & O' REARDON, LLP
00236480

extensive training its technicians undergo—270 hours of professional instruction—suggesting that its employees possess superior knowledge in vehicle maintenance.




32. Additionally, Valvoline includes a free 18-point maintenance check with every oil change, inspecting various vehicle components such as transmission fluid, brake fluid, power steering fluid, battery performance, and tire pressure. These services create the impression that Valvoline is a trusted expert in automotive care and dedicated to ensuring customers' vehicles remain in peak condition.

***Valvoline Consistently and Uniformly Tells Consumers to Return for an Oil Change After 3,000 Miles or 3 Months***

33. At the end of an oil change—whether using conventional, synthetic, or a blend, and regardless of the make and model of the vehicle—a Valvoline technician provides an oil change sticker telling the consumer to return to change their oil again in 3,000 miles or three months. The words "SERVICE YOU CAN SEE. EXPERTS YOU CAN TRUST" are featured prominently:[21]

[21] The oil change sticker is from Plaintiff Delapaz's most recent oil change at Valvoline, which occurred on or around February 9, 2026, when her vehicle's odometer read 92,183 miles.



BLOOD HURST & O' REARDON, LLP
00236480




34. However, at least for vehicles manufactured within the past quarter-century, this is grossly premature.

35. A 2020 Honda Accord, for example, recommends oil changes every 12 months.[22] Even in "dusty conditions" or "urban areas that have high concentrations of soot in the air," Honda recommends oil changes every 15,000 miles.[23] For the 2010 F-150, Ford recommends oil changes every 7,500 miles or 6 months.[24] For the 2015 4Runner, Toyota recommends oil changes every 10,000 miles or 12 months.[25]

---

[22] 2020 Honda Accord Owner's Manual, https://techinfo.honda.com/rjanisis/pubs/OM/AH/ATVA2020OM/enu/ATVA2020OM.PDF

[23] *Id.*

[24] Ford 2010 Model Year Scheduled Maintenance Guide, https://www.fordservicecontent.com/Ford_Content/catalog/owner_guides/10frdmg2e.pdf

[25] 2015 Toyota 4Runner Owner's Manual, https://assets.sia.toyota.com/publications/en/omms-s/T-MMS-



BLOOD HURST & O' REARDON, LLP
00236480

## CLASS ACTION ALLEGATIONS

36. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of a class defined as:

> All persons who paid for Defendants' Full-Service Oil Change in the State of California from the beginning of the applicable limitations period until the date notice is provided to the Class.

Excluded from the Class are: (1) Valvoline and its officers, directors, employees, principals, affiliated entities, controlling entities, agents, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the judge assigned to this case and any members of their immediate families.

37. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all other members of the Class were damaged by the same wrongful conduct committed by Defendants, as alleged more fully herein.

38. Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other members of the Class.

39. Plaintiff has retained counsel competent and experienced in the prosecution of the class litigation.

40. Questions of law and fact common to the members of the Class are central here and predominate over questions that may affect only individual members. Among the questions of law and fact common to the Class are:

a. Whether Valvoline made material misrepresentations and/or omissions in advertising, marketing and selling engine oil change services;

---

154Runner/pdf/2015_Toyota_4Runner_WMG.pdf

b. Whether Valvoline omitted material facts in advertising, marketing and selling engine oil-change services;

c. Whether Valvoline knew or should have known of the material information it did not disclose in advertising, marketing and selling engine oil change services;

d. Whether Valvoline intended that Plaintiff and Class members rely on its material misrepresentations in purchasing engine oil change services;

e. Whether Valvoline has been unjustly enriched;

f. Whether Plaintiff and Class members are entitled to monetary relief;

g. Whether Plaintiff and Class members are entitled to injunctive relief;

h. Whether Plaintiff and Class members are entitled to declaratory relief; and

i. Whether Plaintiff and Class members are entitled to attorneys' fees and costs.

41. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The burden and expense that would be entailed by individual litigation makes it impracticable or impossible for Class members to prosecute their claims individually. Further, the adjudication of this action presents no unusual management difficulties.

42. In the alternative, the Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

43. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendants from engaging in the acts described, and to require Defendants to provide full restitution to Plaintiff and Class members.

## FIRST CAUSE OF ACTION

### Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.)

44. Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

45. Defendants are "person[s]" as that term is defined under Cal. Business & Professions Code § 17201.

46. Defendants are "automotive repair dealer[s]" as defined by Cal. Business & Professions Code § 9880.1, subparagraph (a), and within the meaning of Cal. Code Regs. Tit. 16, § 3371.

47. The UCL, Cal. Business & Professions Code § 17200, *et seq*., prohibits any "unlawful," "fraudulent," or "unfair" business act or practice. In the course of business, Defendants committed "unlawful" business practices by, among other things, making the representations (which also constitutes advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5) and (15); Cal. Business & Professions Code § 17200, *et seq*., § 17500, *et seq*.; and the common law. Defendant also committed "unlawful" business acts or practices by making false or misleading statements or advertisements which they know to be false or misleading, or which by the exercise of reasonable care should be known to be false or misleading, in violation of Cal. Code Regs. Tit. 16, § 3371.

48. Plaintiff Delapaz, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

49. In the course of conducting business, Defendants committed "unfair" business practices by, among other things, making the 3,000 Mile / 3-Month Representation (which also constitutes advertising within the meaning of section 17200) and omissions of material facts. There is no societal benefit from false advertising; only harm. Plaintiff Delapaz and Class members would not have paid for the oil-change service at premature intervals had they known the truth about the 3,000 Mile / 3-Month Representation. As a result, Defendants' conduct is "unfair," as it offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

50. Further, as set forth in this Complaint, Plaintiff Delapaz alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Cal. Business & Professions Code § 17200, *et seq*.

51. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Cal. Business & Professions Code § 17200, *et seq*., also prohibit any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act or practices" by, among other things, making the 3,000 Mile / 3-Month Representation (which also constitute advertising within the meaning of section 17200) and omissions of material facts as set forth more fully herein.

52. Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Cal. Business & Professions Code § 17200, *et seq*.

53. Plaintiff Delapaz and the other Class members have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and the other Class members, each of whom paid for the oil-change services. Plaintiff and Class members have suffered injury in fact and lost money as a result of paying for the oil-change services and Defendants' unlawful, unfair, and fraudulent practices.

54. Defendants knew, or should have known, that their material representations and omissions would be likely to deceive the consuming public and result in consumers prematurely changing their engine oil and, indeed, intended to deceive consumers.

55. Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

56. Plaintiff Delapaz on behalf of herself, all others similarly situated, and the general public, seek restitution from Defendants of all money obtained from Plaintiff and the other Class members collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**COUNT II**

**Violation of The Consumers Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq*.)**

57. Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

58. Plaintiff Delapaz is a consumer as defined by California Civil Code section 1761(d). The oil-change services are "services" within the meaning of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

59. Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in

transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the oil-change services: "Representing that the [oil-change services] have . . . uses [or] benefits . . . they do not have"; and "representing that [the oil-change] service is needed when it is not." Cal. Civ. Code § 1770(a)(5), (a)(15).

60. Defendants violated the CLRA by representing and failing to disclose material regarding the 3,000 Mile / 3-Month Representation, as described above, when they knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

61. Pursuant to California Civil Code section 1782(d), Plaintiff Delapaz, individually and on behalf of the other members of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendants and for all available relief under the CLRA, including, but not limited to, damages, attorneys' fees and costs, and any other relief this Court deems proper.

62. Pursuant to California Civil Code section 1782(a), Defendants were notified in writing by certified mail of the particular violations of section 1770 of the CLRA, which notification demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. A copy of the letter is attached hereto as **Exhibit A**. Because Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the Act, Plaintiff is entitled to and hereby amends the complaint to seek damages, as appropriate, in addition to seeking other relief available under the Consumers Legal Remedies Act, including restitution and disgorgement.

63. Pursuant to section 1780(d) of the CLRA, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants as follows:

A. An Order certifying the proposed Class defined herein, designating Plaintiff as representative of said Class, and appointing the undersigned counsel as Class Counsel;

B. For an order declaring that Defendants' conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all causes of action asserted herein;

D. For compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E. For an order of restitution and all other applicable forms of equitable monetary relief;

F. For an order enjoining Defendants from engaging in the unlawful conduct described herein, including, but not limited to, making the 3,000 mile / 3-Month Representation;

G. For prejudgment interest on all amounts awarded; and

H. For an order awarding Plaintiff and the members of the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Dated: June 16, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)
JAMES M. DAVIS (301636)
ADAM BUCCI (327312)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490

San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com
jdavis@bholaw.com
abucci@bholaw.com

LAW OFFICE OF D. JOSHUA STAUB
D. JOSHUA STAUB (170568)
JAMES C. D. CARR (308118)
13015 W Washington Blvd.
Los Angeles, CA 90066
Tel: 424/216-1776
josh@djoshuastaub.com
james@carrlawgrp.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 16, 2026.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com