BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
jdavis@bholaw.com

LAW OFFICE OF D. JOSHUA STAUB
D. JOSHUA STAUB (170568)
JAMES C. D. CARR (308118)
13015 W Washington Blvd.
Los Angeles, CA 90066
Tel: 424/216-1776
josh@djoshuastaub.com
james@carrlawgrp.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE**

SCOTT MOREE on behalf of himself, those similarly situated and the general public,

Plaintiff,

v.

VALVOLINE INC.; VALVOLINE INSTANT OIL CHANGE FRANCHISING, INC.

Defendants.

Case No. 5:25-cv-02469-JGB-DTB

**~~[PROPOSED]~~ STIPULATED ESI PROTOCOL**

District Judge Jesus G. Bernal
Courtroom 1, 2nd Floor
Magistrate Judge David T. Bristow
Courtroom 4, 3rd Floor

Complaint Filed: June 5, 2025
Removal: September 18, 2025
Trial Date: TBD

**JURY TRIAL DEMANDED**

**IT IS HEREBY STIPULATED AND AGREED** that this stipulated protocol ("ESI Protocol") for the production of documents and electronically stored information ("ESI") and privilege logs shall govern the production of documents and electronically stored information by the Parties in the above-captioned litigation (the "Action"). This Stipulation shall also govern productions made by any third party who is subpoenaed in this Action unless otherwise agreed to by the issuing Party and the third party. This Order supplements all other discovery rules and orders. It streamlines ESI production to promote a "just, speedy, and inexpensive determination of this action," as required by Federal Rule of Civil Procedure 1.

## I. GENERAL PROVISIONS

**A. Scope.** These specifications apply to both ESI and documents originating as paper, which are also to be produced in electronic form in this litigation as provided below. The Parties will make reasonable efforts to prepare responsive and non-privileged paper documents and ESI for production in accordance with the agreed-upon specifications set forth below. The Parties acknowledge that, at the time this ESI Protocol is submitted, they are in the initial stages of litigation, fact investigation, and discovery in this case and that unanticipated challenges concerning the discovery of ESI may arise as the case proceeds. Nothing in this ESI Protocol (i) obligates a Party to comply with the specifications and procedures set forth herein if compliance would be impossible, impracticable, or unduly burdensome or (ii) requires preservation, collection, processing, searching, review, or production of ESI that is not reasonably accessible because of undue burden or cost; or (iii) requires any Party to take steps beyond what is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Nothing in this section shall excuse a Party from complying with the specific preservation, collection, search, metadata, production,

and logging obligations agreed to herein, absent agreement of the Parties or Court order.

**B. Cooperation and Transparency.** The Parties acknowledge their duty to work together cooperatively throughout the discovery process and permit an appropriate level of transparency, consistent with their obligations under applicable rules. The Parties agree that good faith cooperation and transparency result in meaningful and cost-effective discovery. The Parties recognize that discovery shall be an iterative, proportionate, and cooperative process and that these principles may require the Parties to reevaluate portions of this ESI Protocol during discovery. The Parties will meet and confer in such situations, or anytime an issue or concern arises regarding ESI, as necessary and appropriate.

**C. Exchange of ESI-Related Information.** Within 30 days of the entry of this Stipulation, the Parties agree to exchange in writing the information listed below. The Parties agree and understand that these disclosures are based on information reasonably available as of the date served and shall be supplemented in accordance with Federal Rule of Civil Procedure 26:

1. Custodians. A preliminary list of custodians reasonably likely to possess discoverable information (including current employees, former employees, and, where applicable, contractors or third parties acting on the Party's behalf, if such information is in the Party's possession, custody, or control), including each custodian's job title, and the relevant time period(s).

2. Non-custodial sources. A general description of non-custodial sources reasonably likely to contain discoverable information (e.g., shared mailboxes, shared drives, document management systems, ticketing/CRM databases, call-center/telephony systems, marketing platforms, collaboration workspaces), including the relevant time period(s).

To the extent any Party becomes aware of any discoverable and responsive ESI that has been lost, deleted, overwritten, or is otherwise no longer retrievable, that Party

will promptly inform the other Party of such lost or destroyed ESI, including (to the extent reasonably available) the type of ESI, the source, and the approximate date range of the loss. Likewise, to the extent any Party becomes aware of any discoverable and responsive ESI the Party contends is not reasonably accessible or may not be searched, that Party will promptly inform the other Party of such inaccessible ESI, including the source/system and reasons for the asserted inaccessibility.

**D. Security.** The Parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media for submission. The producing Party shall provide the necessary information to decrypt any productions to the receiving Party by a separate email or letter contemporaneously with the production.

**E. Confidentiality Designation.** Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order. If the producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this matter, then the designation shall be included in a separate field in the dat load file, as well as the TIFF placeholder or, where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

**A. Redactions**. To the extent that a responsive document is redacted, consistent with the Protective Order governing this case, any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., “Redacted - Privileged,” “Personal Information”). A

Party may not redact information on the basis that it believes the information to be irrelevant. If the Parties are redacting information from a page, they shall electronically "burn" the word "REDACTED" onto the applicable portion of the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), e.g., by blacking out the text. The redacted TIFF image shall be produced in accordance with any other provisions for the production of TIFF images contained herein. Redacted text shall not be included in the text file for that redacted TIFF image. The original unredacted native file shall be preserved pending conclusion of this Action. Furthermore, a document's status as redacted does not relieve the producing Party from providing all applicable metadata contemplated herein unless the metadata withheld contains privileged content.

All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information. The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly discoverable in the event that a Party moves for production thereof.

**B. De-duplication.** De-duplication of hard-copy documents, or that of "loose" electronic documents (e.g., presentation slides located on the custodian's C: drive) against email attachment versions of those same documents is not permitted. However, for other electronic information, a Party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 or SHA1 hash values, provided that all custodians in possession of the de-duplicated items are identified in the appropriate coding field (e.g., DUPECUSTODIAN, ALLCUSTODIANS, etc.). Emails and their attachments shall be treated as a single unit when deduplicating; duplicative attachments shall not be stripped from their parent emails if the parent

email itself is not identified as a duplicate as well. These specifications do not allow for near de-duplication or email threading (i.e., email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic files). If during the course of its review, the producing Party identifies a large number of duplicate documents, the Parties may confer regarding a custom deduplication protocol.

**C. Production Media.** The preferred means of producing documents is via secure FTP or other electronic secure file share. However, documents may also be produced via encrypted CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing Party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. Each encrypted media volume should have its own unique filename and a consistent naming convention (e.g., ZZZ001 or BLOOD001). The volume names shall be consecutive (e.g., BLOOD001, BLOOD002, etc.). Each item of production media (or in the case of FTP productions, each production transmittal letter) shall include: (1) the producing Party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; (4) the set(s) of for which the documents are being produced; and (5) the custodial and non-custodial sources from which documents were collected and searched in connection with that production.

**D. Custodian or Originating Source.** If technically feasible and available, the custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive, etc.) should be produced in such a fashion as

to identify the department, group, entity, or facility. A producing Party shall use a uniform description of a particular custodian across productions.

**E. Preservation.** Each Party is responsible for taking reasonable and proportionate steps to preserve relevant, discoverable, ESI within its possession, custody, or control identifiable through reasonably diligent efforts.

Counsel for Plaintiff(s) has advised that Plaintiff(s) have been instructed on their preservation obligations.

Counsel for Defendant(s) has advised that Defendant(s) have been instructed on their preservation obligations.

**F. Inaccessible Data.** To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree the following data sources are not reasonably accessible because of undue burden or cost, and ESI from these sources will not be preserved, searched, reviewed, or produced unless agreed by the Parties or ordered by the Court:

a. Deleted, fragmented, or unallocated data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. Dynamic fields in databases or log files not stored or retained in the usual course of business.

d. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment that was not used by identified custodians.

e. Backup tapes, disaster recovery systems, or other media maintained solely for business continuity purposes and not used in the ordinary course of business.

However, nothing in this section precludes any Party from seeking discovery of such sources upon a showing of good cause and particularized need, including evidence of spoliation or other misconduct.

**G. Destroyed Information Disclosure.** If, during its document collection efforts, a Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable, the Party shall explain, to the extent that the information is reasonably available, where and when the ESI was last retrievable in its original format. Parties shall not be obligated under this Stipulation to produce deleted ESI lost as a result of the routine, good-faith operation of an ESI system prior to the date a litigation hold was actually, or was required to be, put into effect, whichever first occurs.

**H. Foreign Language Documents.** All documents, including ESI, shall be produced in their original language. Where a responsive document exists in a foreign language and the producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery. The Parties will meet and confer concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach an agreement, the matter may be submitted to the Court for determination.

**I. Errors / Replacement Productions.** If a production contains errors (corruption, broken load files, missing natives, mismatched Bates, family linkage failures), the producing party will cure within a reasonable time after notice and

provide a replacement production with a cross-reference identifying superseded Bates ranges/records.

## II. ESI SEARCH

### A. ESI Search Methodologies

1. The Parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. The Parties shall discuss proposed search terms, date restrictions, and custodian restrictions. The meet-and-confer process will continue to be utilized as needed, and will address topics such as the identity and role of custodians possessing relevant information. To the extent either Party has questions about custodians, the location of documents, or preservation of documents, the Parties shall meet and confer.

2. If technically feasible, any search methodology employed must support the use of stemmed (e.g., using * to include variations on a keyword), fuzzy, and Boolean searches. The documents on which the search terms hit and that are within the date and custodian restrictions are referred to as the "Review Set."

3. Agreement on a search methodology does not relieve a Party of its obligation under the rules to conduct a reasonable search and produce all relevant and responsive documents not subject to written objection of which a Party is aware, regardless of whether they contain agreed-upon search terms or are collected pursuant to any other search methodology agreed to by the Parties or ordered by the Court.

4. **Keyword Searches:**

a) Prior to implementing search terms, the producing party will provide a list of proposed search terms to the requesting party and confer in good faith with the requesting party to determine the mutually agreeable search terms before using any search terms.

b) After receipt of the proposed search terms, the receiving party shall promptly provide the producing party with additional search terms, if any, the receiving party believes are necessary to identify responsive documents. The Parties shall subsequently meet and confer regarding the proposed search terms and shall provide hit reports after global de-duplication for any search terms from the receiving party to which the producing party objects on the basis of burden. Such deduplication shall include the following:

(1) the number of documents that hit on each term, excluding from the count family members that do not themselves contain hits (with a separate family-inclusive count provided in subsection (3));

(2) the number of unique documents that hit only on that term none of the other proposed or agreed terms, excluding from the count family members that do not themselves contain hits (with a separate family-inclusive count provided in subsection (3)); and

(3) the total number of documents with hits for that term, including in the count any family members that do not themselves include hits (i.e., a family-inclusive count).

c) The requesting party may, with good cause, propose additional custodians, sources and search terms (for example, if a proposed term, or the significance of a proposed term, was unknown to the requesting party as of the time the original list was formulated). The Parties agree to meet and confer in good faith regarding the utility and burden of additional custodians, sources, or search terms.

d) If the Parties are unable to resolve disputes over search terms through the meet and confer process, the Parties will submit the dispute to the Court in the form of a joint discovery letter or report, with a discussion of the relevance and/or burden associated with the search terms in dispute.

e) The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate validation procedures and random sampling (both of non-relevant sets and of the entire collection against which search terms were run) by the searching Defendant, and disclose sufficient information in order to calculate and achieve an appropriate balance of recall and precision. If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

f) The Parties will iteratively refine search terms using hit reports and responsiveness feedback. The Parties shall presume that two rounds of iterative refinement are sufficient, but either Party may seek additional rounds upon a showing of good cause, including evidence that the search process is materially underinclusive or overinclusive, without requiring a formal Court order unless the Parties cannot agree.

5. **Technology Assisted Review:** If a producing party seeks to use predictive coding, also known as technology assisted review ("TAR"), or other technologies (e.g., artificial intelligence tools) for the purpose of identifying or culling the documents to be reviewed or produced, they will notify the opposing party of their intent to do so before commencing any such review or culling. Following this notification, the Parties will meet and confer on a mutually agreeable protocol.

6. **Unsearchable Documents.** Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective shall be handled as follows: The producing party will make reasonable efforts to identify such documents and, where the volume of unsearchable documents is large, the Parties will meet and confer regarding a proportionate review protocol, which may include sampling. As with all other documents, the producing party may review unsearchable documents for responsiveness, confidentiality, privilege, and other protections prior to determining if the document will be produced.

7. **Known Responsive ESI.** Documents or ESI known to be responsive to a discovery request and that is/are not otherwise subject to objection shall be produced, or logged on a privilege log where required by the governing protective order, without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Order. The producing party retains its right to review all such documents prior to making a final production decision. Nothing in this provision creates an independent obligation to conduct additional searches or investigations beyond those otherwise required by this ESI Protocol. This provision confirms, rather than limits, the producing party's obligation to produce ESI of which it has actual knowledge, consistent with its obligations under the Federal Rules of Civil Procedure.

8. **Discrete Document Collections / Custodian Identified Files.** Discrete folders or collections of information believed by a producing party to be substantially comprised of documents relevant to the claims and defenses in this proceeding, such as a folder of documents gathered by a custodian because s/he believes the materials to be relevant, will be reasonably reviewed for possible production without restricting that review solely to documents containing the Parties' agreed search terms; provided, however, that the producing party may apply reasonable, agreed-upon date restrictions and other agreed-upon limitations to such collections.

## III. PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents originating in paper format, the following specifications should be used for their production:

**A. TIFFs.** Hard-copy documents should be produced as black-and-white image files, except where noted below, in the form of single-page, Group IV TIFFs with a minimum resolution of 300 dpi. Each TIFF image should be named as its corresponding Bates number. Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be

provided in a self-identified "Images" folder. Hard-copy documents must be produced as they are kept, reflecting attachment relationships between documents and information about the file folders within which each document is found. In addition, multi-page documents must be produced as single documents (properly unitized) and not as multiple single-page documents. The Parties will make their best, commercially reasonable efforts to unitize the documents correctly. Where color is required to interpret the document, such as presentations, hard-copy photos and documents with charts, that image must be produced in color. These color images are to be produced as .jpg format. Hard-copy photographs should be produced as color .jpg, if originally in color, or black and white .tif files if originally in black and white. Photographs shall be scanned at a resolution of at least 600 dpi. Where reasonably possible, all digital photographs will be produced as full color image files in their native file format at their original resolution.

**B. OCR Text Files.** Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page. Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .TXT. OCR text files should be provided in a self-identified "Text" directory. To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions. The settings to achieve the highest quality text, such as "auto-deskewing" and "auto-rotation," should be turned on during the OCR process.

**C. Database Load Files/Cross-Reference Files.** Documents should be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (i.e., .OPT and .DAT files) should be provided in a self-identified "Data" folder.

**D. Unitizing Documents.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split

into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. If a hard copy document includes affixed notes (e.g., sticky notes or flags), the document shall be scanned with the notes visible. If the note obscures underlying content, a second scan of the page with the note temporarily removed shall be made to capture the obscured content. Both images shall be treated as part of the same document and logically unitized together. The Parties will make their best, commercially reasonable efforts to have their vendors logically unitize documents correctly, maintain Parent-Child Relationships (discussed below), and will commit to address situations of improperly unitized documents or circumstances where Parent-Child Relationships have not been maintained and produced.

**E. Coding Fields.** Hard copy documents should be produced with at least the following searchable information, as applicable, in accompanying delimited data files:

| **Field** | **Description** |
|---|---|
| BEGBATES | The Bates number of the first page of the document. |
| ENDBATES | The Bates number of the last page of the document. |
| CUSTODIANS | Every person, shared file, or other source from whom the document was collected. Custodians should be identified using the convention “last name_first name.” Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. |

| | |
|---|---|
| FOLDERLABEL | The hard copy folder / binder title / label. |
| OCR/TXTPATH | The relative path to the OCR/Txt Files. |
| REDACTED? | Whether the document is redacted (Yes/No). |
| REDACTREASON | Reason for redaction (AC, WP, PII). |
| CONFIDENTIALITY | The confidentiality designation, if any, for the document pursuant to any protective order in the case. |
| PAGES | The number of pages of the document. |
| FILESIZE | File size. |
| PRODVOLUME | The name of the production set or media volume from which the document originates (e.g., APPLE_VOL001). This field is used to track which load file or media set the document was produced in. It does not affect the Bates prefix. |
| PAPER? | The metadata field will be populated with "Yes" for all documents that were scanned from hard copy for production purposes. |
| DOCUMENTDATE | Date appearing on the face of the document, if readily identifiable (mm/dd/yyyy). Leave blank if none. |
| BEGATTACH | Beginning Bates number of the first document in an attachment range |
| ENDATTACH | Ending Bates number of the last document in an attachment range. |

**F. Bates Numbering.** Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (i.e., padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

## IV. PRODUCTION OF ESI

### A. Images.

1. Except as specified below, ESI should be produced as single-page 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image for documents that are produced in color, and for non-color documents produced as single-page black and white, TIFF Group IV, 300 DPI TIFF images with a .opt image cross-reference file and a text-delimited .dat load file. TIFFs/JPGs should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of e-mail messages should include the BCC line. PowerPoint materials shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF/JPG image. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF/JPG image is unreadable or has materially degraded the quality of the original, the producing party will use reasonable efforts to provide a higher quality TIFF/JPG image or the native or original.

2. Each TIFF/JPG image should be named as its corresponding Bates number. Bates numbers, confidentiality designations, and redactions should be burned into the TIFF/JPG image files. TIFF/JPG image files should be provided in a self-identified "Images" folder. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF/JPG image is unreadable or has materially degraded the quality of the original, the producing party will use reasonable efforts to provide a higher quality TIFF/JPG image or the native or original.

3. In the alternative to the TIFF/JPG image production format, the producing party may elect to provide all ESI solely in its native format. If it is infeasible to produce an item of ESI in its native format, it may be produced in a near-native format. The file names for ESI produced in native or near-native format should

be their Unique ID number. The native or near-native production should also include Concordance delimited load files containing the metadata associated with each electronic document, including those metadata fields identified below, along with the extracted text and a link to the produced native or near-native file.

**B. System Files.** Common system and program files as defined by the NIST Library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. If a producing party chooses to exclude any other file types from review, the producing party will identify for the receiving party the categories of file types being excluded.

**C. Time Zone.** Unless otherwise agreed by the Parties, where practicable and not unduly burdensome to the producing Party, all dynamic date and time fields (where such fields are processed to contain a value) and all metadata pertaining to dates and times will be standardized either to Pacific Time or another standard time zone.

**D. Auto Date/Time Stamps.** ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

**E. Metadata Fields and Processing.** Using the delimiters detailed above, the Concordance Delimited Text file applicable to electronic documents should contain, to the extent reasonably available, the following metadata.

| Field | Description |
|---|---|
| BEGBATES | The Bates number of the first page of the document. |
| ENDBATES | The Bates number of the last page of the document. |
| PAGES | The number of pages of the document. |

BLOOD HURST & O' REARDON, LLP

| Field | Description |
|---|---|
| FILESIZE | The size of the native file in bytes at the time of collection, including any embedded objects or attachments within the file. |
| FAMILYRANGE | The Bates number of the first page of the parent document (e.g., email) to the Bates number of the last page of the last attachment "child" document in a family of documents (e.g., the last attachment). |
| BEGATTACH | First Bates identifier of attachment range. |
| ENDATTACH | Last Bates identifier of attachment range. |
| BEGPARENT | First Bates identifier for the parent document/email of a family (will not be populated for documents that are not part of a family). |
| HASATTACH | Whether the ESI has attachments (Yes/No). |
| ATTACHCOUNT | The number of attachments to the parent document. |
| ATTACHID | First Bates identifier of "child" attachment(s). Separated by a semicolon if more than one Bates number listed because of multiple child attachments (will not be populated for documents that are not part of a family). |
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document(s). Separated by a semicolon. This field shall be populated for attachments produced as separate child documents, and need not be populated for inline/embedded images or other non-standalone items (e.g., signature images) that are not produced as separate child documents. |

| **Field** | **Description** |
|---|---|
| PARENTDOCDATE | The date (MM/DD/YYYY format) associated with the parent document to which a given attachment or child item is linked. For emails, this is the DateSent of the parent email. For other documents, this reflects the date the document was created as recorded in the document's metadata. |
| FILEPATH | For non-email files, the original path/location on the source system; for email, the mailbox/store identifier (e.g., custodian mailbox/shared mailbox) and folder path where reasonably available. |
| FILENAME | The original filename at the point of collection of an attachment or stand-alone e-file. |
| FILEEXT | The original file extension at the point of collection of an attachment or stand-alone e-file (*e.g.*, .doc, .xls). |
| SUBJECT | The subject of an email. |
| SENTDATETIME | The date and time the email or calendar item was sent, as recorded in the item's metadata. (MM/DD/YYYY HH:MM:SS format)<br><br>A given email will have either a SENTDATETIME or RECEIVEDDATETIME, but not both.<br><br>Also populate for any non-email ESI whose native format includes a message transmission timestamp (e.g., chat, SMS, IM, social-media DMs, calendar invites, call logs). Leave blank for ordinary documents that have no send/receive concept. |

| Field | Description |
|---|---|
| RECEIVEDDATETIME | The date and time (MM/DD/YYYY HH:MM:SS format) the email was received by the recipient's mail server or email client, as recorded in the item's metadata. This is distinct from the SENTDATETIME, which reflects when the email was sent by the sender.<br><br>Also populate for any non-email ESI whose native format includes a message transmission timestamp (e.g., chat, SMS, IM, social-media DMs, calendar invites, call logs). Leave blank for ordinary documents that have no send/receive concept. |
| EMAILMESSAGEID | For email, the unique message identifier assigned by the host email system (e.g., the Message-ID header in MIME format). |
| MESSAGEREPLYTOID | The message ID of the email to which this message is replying, as assigned by the host email system. Used to establish reply relationships in email threads. |
| CREATEDATETIME | For e-files or attachments, the document's creation date and time or operating system creation date and time in the format MM/DD/YYYY HH:MM:SS. |
| LASTMODDATETIME | For e-files or attachments, date and time the document was last modified to the file system of the original media from which it was collected. In the format MM/DD/YYYY HH:MM:SS. |
| LASTMODIFIEDBY | The name of the last person to edit the document. |

| **Field** | **Description** |
|---|---|
| LASTACCESSEDDATETIME | Date and time the document was last accessed as recorded on the source system prior to collection for this litigation. In the format MM/DD/YYYY HH:MM:SS. |
| APPTSTARTDATETIME | The start date and time of a calendar event. In the format MM/DD/YYYY HH:MM:SS. |
| APPTENDDATETIME | The end date and time of a calendar event. In the format MM/DD/YYYY HH:MM:SS. |
| TITLE | The extracted document title of a document. |
| AUTHOR | The author of a stand-alone e-file or attachment. |
| FROM | The display name and email address of the author of an email or calendar item. An email address should always be provided. In the format "John Smith <jsmith@gmail.com>". |
| TO | The display name and email address of the recipient(s) of an email or calendar item. An email address should always be provided for every email, separated by semicolon, if a recipient existed. In the format "John Smith <jsmith@gmail.com>; tjones@gmail.com". |
| CC | The display name and email address of the copyee(s) of an email or calendar item. An email address should always be provided for every email, separated by semicolon, if a copyee existed. In the format "John Smith <jsmith@gmail.com>; tjones@gmail.com". |

| **Field** | **Description** |
|---|---|
| BCC | The display name and email address of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email, separated by semicolon, if a blind copyee existed. In the format "John Smith <jsmith@gmail.com>; tjones@gmail.com". |
| IMPORTANCE | For emails, "High," "Low," or "Normal (or equivalent if an email client other than Outlook was used). |
| CUSTODIAN | The person, shared file, or other source from whom the document was found. Custodians should be identified using the convention "last name_first name." Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. |
| DUPECUSTODIAN | If deduplication is employed, the name(s) of any person(s), shared file(s), or other source(s) from whom the identical item was collected and deduplicated. Duplicate custodians should be identified using the convention "last name_first name." Duplicate entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. |

| Field | Description |
|---|---|
| DATASOURCE | The source system or repository from which the document was collected, including sufficient detail to distinguish between individual mailboxes, shared mailboxes, specific SharePoint/Drive sites, collaboration workspaces (e.g., specific Slack workspace), mobile device collections, or enterprise systems. This field is distinct from FILEPATH. |
| HASH | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATIONID | Email thread identifier created by the email system. This is a 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. |
| NATIVELINK | The file path to the location of the native file if produced natively. |
| OCR/TXTPATH | The relative path to the OCR/Txt Files. |
| HASREVISIONS? | Denotes presence of tracked changes. (Yes/No). Populate where reasonably available; otherwise leave blank. Regardless, producing party must not intentionally suppress tracked changes/comments/notes where they are part of the document content, and must produce in native where imaging would omit or materially impair them. |

| Field | Description |
|---|---|
| HASCOMMENTS? | Denotes presence of comments (e.g., Word or PDF annotation comments). (Yes/No). Populate where reasonably available; otherwise leave blank. Regardless, producing party must not intentionally suppress tracked changes/comments/notes where they are part of the document content, and must produce in native where imaging would omit or materially impair them. |
| HIDDENCONTENT? | Denotes presence of hidden content/text. (Yes/No) |
| HIDDENCONTENTTYPE | Where hidden content/text is present, identifies the type(s) of hidden content, if reasonably identifiable from processing metadata, such as hidden text, hidden formatting, hidden layers, slides, speaker notes, columns, rows, or worksheets. |
| HAS_HYPERLINK | Whether the document contains one or more user-created hyperlinks to another document, file, cloud-hosted document, SharePoint/OneDrive location, intranet resource, database, or other electronically stored information, where reasonably extractable. The Producing Party need not populate this field based solely on hyperlinks associated with non-user-created or non-substantive content, including automatically generated logos, icons, social-media links, unsubscribe links, or similar footer content. |

| Field | Description |
|---|---|
| HYPERLINK_TARGETS | The URL, file path, document identifier, system identifier, parsed link value, or other destination associated with each user-created hyperlink, where reasonably extractable. Multiple values may be separated by semicolons or provided in a separate delimited overlay or link report keyed to the document's beginning Bates number. |
| HYPERLINK_COUNT | The number of user-created hyperlinks contained in the document, where reasonably extractable. |
| REDACTED? | Whether the document is redacted (Yes/No). |
| REDACTREASON | Reason for redaction (AC, WP, PII). |
| CONFIDENTIALITY | The confidentiality designation, if any, for the document pursuant to any protective order in the case. |
| DEDUPED | Full folder path/location of deduplicated instances (i.e., exact duplicate file(s). Multiple values may be separated by semicolons. |
| PRODVOLUME | The name of the production set or media volume from which the document originates (e.g., APPLE_VOL001). This field is used to track which load file or media set the document was produced in. It does not affect the Bates prefix. |

If a producing party intentionally withholds some or all of the metadata that was contained in the electronic documents and required to be produced under this Stipulated ESI Protocol, the producing party shall inform all other Parties of this fact, in writing, at or before the time of production. All producing parties agree to take reasonable efforts to ensure that any metadata not provided in connection with the

production of electronic documents is preserved. A requesting Party may request that metadata not provided in connection with a particular electronic document be investigated and produced, to the extent reasonably available and relevant to any claims or defenses in this litigation and not unduly burdensome to locate and produce. Producing parties agree that reasonable and proportionate requests for omitted metadata will not be denied.

**F. Extracted Text Files.** For each document, an extracted text file (not OCR text) should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .TXT. File names should not contain any special characters or embedded spaces. Electronic text should be extracted directly from the native file and should be delivered on a document level according to the specifications above similar to paper documents. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

**G. Database Load Files/Cross-Reference Files.** Documents should be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (i.e., .OPT and .DAT files) should be provided in a self-identified "Data" folder.

**H. Native Files.** All spreadsheet files (e.g., Excel files, .CSV files), presentation files (e.g., PowerPoint), documents with audio or video aspects, tracked changes, comments, or other collaborative change features turned on, source code, audio files, video files, image (e.g., .gif or .jpg) and multimedia files shall be produced in native format (unless redacted, in which instance they will be produced in the manner specified in the ""Redacted Natives" provisions herein). All natives should be linked to the database by the above metadata field "NATIVELINK", along with extracted text (where extracted text is available) and the metadata fields identified

above. The requesting party may request the producing party consider production of certain other documents and/or databases initially produced in imaged format to be produced in their native format in the event that the imaged format is not reasonably usable. The requesting party shall identify the documents by their Bates numbers, and, if and to the extent such request is reasonable, the documents should be produced in their unaltered native format with an accompanying delimited text file (using the delimiters above) containing the metadata associated with each electronic document, including those metadata fields identified above, along with the extracted text and a link to the produced native file. All natively produced documents should include a Bates-numbered TIFF image placeholder slipsheet with the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page. The producing party will also brand any applicable confidentiality designation in the right-hand corner of the placeholder.

**I. Redacted Natives.** Where a document that would otherwise be produced in native format must be redacted, the producing party shall redact at the native level and produce the redacted native file, with redacted content clearly marked, together with a Bates-numbered TIFF placeholder slipsheet. Specifically:

1. **Spreadsheets.** Redacted spreadsheets shall be produced in their native format with privileged content removed, not merely hidden. Redacted cells shall be clearly marked (e.g., highlighted or labeled "REDACTED"). A Bates-numbered TIFF placeholder slipsheet shall accompany each redacted native spreadsheet.

2. **Audio, Video, and Voice Recordings.** Where a responsive audio or video file contains both privileged and non-privileged content, the producing party shall produce the file with the privileged segment(s) excised and shall identify in the privilege log the approximate timestamp range(s) of the excised content and the basis for the privilege claim. Where the producing party contends that an entire audio or video file is privileged, it may withhold the complete file, provided that the privilege

BLOOD HURST & O' REARDON, LLP

log entry identifies the file name, total runtime, and the basis for the privilege claim with sufficient specificity to permit the receiving party to evaluate the assertion.

**J. Hidden Text.** All hidden text (e.g., track changes, comments, hidden columns, hidden slides, mark-ups, notes) shall be expanded and rendered in the extracted text file. For files that cannot be expanded, linked native files shall be produced with the image files.

**K. Structured Data.** To the extent responding to a discovery request requires production of ESI contained in a database, the Parties will meet and confer regarding methods of production that will provide all responsive information in a reasonably usable format. Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. All such reports shall be produced in a delimited electronic format preserving field and record structures and names. A document reference sheet shall be provided to describe the purpose of the database and meaning of all tables and column headers produced. The Parties shall meet and confer as needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

**A. Color.** The Parties shall produce documents in color where the document in its original format contained color in charts or graphics, contained track changes or highlights, are emails that contain color in the body of the email (e.g., email stating "my comments are in red below"), or are presentation files that have been redacted for privilege and thus produced as images and not in native format. The Parties will consider reasonable requests for reproduction of additional color documents if an original document contains color necessary to understand or convey the meaning or content of the document. Color images should be produced with a high quality setting as to not degrade the original image.

**L. Parent-Child Relationships.** Parent-child relationships (the association between emails and attachments) will be preserved and produced. All child

document(s) (e.g., email attachment(s)) will be consecutively produced immediately after the parent document (e.g., the parent email).

**M. Family Groups.** Productions will be family inclusive, meaning all documents in an attachment range (such as cover emails and attachments thereto or files with extracted embedded OLE documents) will be produced if any part of the attachment range is produced. For the avoidance of doubt, unless a particular parent or child must be withheld or redacted and logged based on privilege or work-product protection (in which case a placeholder image will be used for that specific part of the withheld family), if any one of the parent or child documents in a relationship is responsive, all parent and child documents in that relationship shall be produced.

1. Pay special attention to the BEGPARENT and ATTACHID fields, which are used to track email families. While this example relates to email families, all attachment relationships for all documents where the parent and/or child are responsive are to be produced in this format.

EXAMPLE: Consider ABC-00001 a 10-page parent email, with records ABC-00011 to ABC-00015, ABC-00016 to ABC-00020, and ABC-00021 to ABC-00025 as its attachments. Fields should be populated exactly as follows using the semicolon as the multi-entry delimiter for ATTACHID:

| **BEGNO** | **ENDNO** | **BEGPARENT** | **ATTACHID** | **FAMILYRANGE** |
|---|---|---|---|---|
| ABC-00001 | ABC-00010 | | ABC-00011; ABC-00016; ABC-00021 | ABC-00001 – ABC-00025 |
| ABC-00011 | ABC-00015 | ABC-00001 | | ABC-00001 – ABC-00025 |
| ABC-00016 | ABC-00020 | ABC-00001 | | ABC-00001 – ABC-00025 |
| ABC-00021 | ABC-00025 | ABC-00001 | | ABC-00001 – ABC-00025 |

**N. Embedded Files.** All embedded objects (e.g., graphical files, Word documents, Excel spreadsheets, .wav files) that are found within a file shall be produced so as to maintain the integrity of the source document as a single document. For purposes of production the embedded files shall remain embedded as part of the original source document. The Parties agree logos need not be extracted as separate documents so long as they are displayed in the parent document.

**O. Hyperlinked Documents.** Hyperlinked documents, files, data, or other electronic resources referenced in an email, chat, message, or other document shall not be treated as members of the same document family solely because they are hyperlinked.

For documents produced in this Action, however, the Producing Party shall produce, to the extent reasonably available and extractable through standard ESI processing tools, metadata or other information sufficient to identify the existence and target of user-created hyperlinks contained in the produced document, including the URL, file path, document identifier, system identifier, parsed link value, or other reasonably extractable target information. The Producing Party need not populate hyperlink metadata based solely on hyperlinks associated with non-user-created or non-substantive content, including automatically generated logos, icons, social-media links, unsubscribe links, or similar footer content.

The Producing Party need not automatically produce each document, file, database, or other electronic resource referenced by a hyperlink solely because it is hyperlinked. Upon a reasonable and particularized request identifying a produced document containing a hyperlink or an identified linked location, the Producing Party shall use reasonable efforts to locate and produce any responsive, nonprivileged document, file, or data within its possession, custody, or control that is the target of the identified hyperlink, subject to proportionality. Where the linked material is produced, the Producing Party shall preserve available relationship metadata or otherwise identify the produced document containing the hyperlink.

For hyperlinks that point to large databases, dynamic systems, repositories, or other sources for which production of the entire linked source would be disproportionate, the Parties shall meet and confer in good faith to define an appropriate scope and form of production. If the Producing Party contends that a requested hyperlink target cannot be located or resolved using reasonable efforts, the Producing Party shall so state and provide a brief explanation sufficient to permit the Receiving Party to evaluate the issue.

**P. Compressed File Types.** Compressed file types (i.e., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**Q. Proprietary File Types.** Proprietary file types, such as those generated by financial or graphic design software, should be discussed with the Requesting Party in advance of production to determine the optimal format of production.

**R. Archive File Types.** Archive file types (e.g., .zip, .rar) must be uncompressed for processing. Each file contained within an archive file should be produced as a child to the parent archive file. If the archive file is itself an attachment, rather than a standalone file, that parent/child relationship between the email or other parent document, the archive file, and the extracted files shall be preserved to the extent reasonably practicable.

## V. ASSERTIONS OF PRIVILEGE

**A. Privilege Logs.** The Parties agree that, for any documents withheld from production or redacted on the basis of an assertion of the attorney-client privilege or work product protection, the withholding Party shall provide the other Party with a privilege log in Excel or CSV format within 30 days of the corresponding production, or at another time agreed by the Parties.

To the extent reasonably available and not itself privileged or protected, the privilege log shall include objective metadata sufficient to evaluate the claim of privilege or protection, including: Beginning Bates Number / Privilege Identifier, Unique Family Identifier, Custodian, From, To, CC, BCC, Subject, Author, File

Name, File Extension, Date Sent, Date Created, Date Last Modified, the type of privilege or protection asserted, whether the document is being withheld in full or redacted, and the general subject matter of the document. The "general subject matter" shall do more than merely recite the privilege asserted and must include a brief, non-substantive description of the subject matter sufficient to assess the claim. In-house attorney names shall be designated with a caret (^); outside counsel names will be designated with a double caret (^^).

For redacted email threads or other threaded communications, the producing Party shall redact only the privileged content while leaving the To, From, CC, and Date fields unredacted on each communication within the thread.

For withheld email threads or other threaded communications, the producing Party may log the thread as a single entry on the privilege log. The privilege log entry for any such withheld thread shall clearly describe the basis for the privilege assertion, including identification of the privileged communication (such as communications with counsel contained lower in the thread) and the relationship of that communication to the remainder of the thread, with sufficient specificity to enable the receiving Party to evaluate the claim of privilege or protection.

Where a producing Party logs a withheld email thread as a single entry with a description of the basis for privilege as set forth above, no separate logging of individual component communications within that thread shall be required. The description for any such withheld thread shall clearly detail the basis for the privilege assertion in the underlying thread, including identification of the counsel whose communications give rise to the privilege claim, where applicable. The parties shall meet and confer in good faith regarding any disputes concerning the sufficiency of a privilege log, and no motion to compel based on the adequacy of a privilege log entry shall be filed unless the parties have first met and conferred.

**B. Logging of Document Families.** Documents shall be logged individually and shall not be logged on the family level. For document families in

which fewer than all the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

**B. Exclusions from Logging.** The following categories of documents do not need to be contained on a privilege log, unless good cause exists to require that a party do so:

1. Attorney-client privileged communications exclusively between a Party and its outside counsel (including outside counsel's agents) regarding the subject matter of this Action and created after the filing of this Action and after the date on which the Party first consulted with such outside counsel regarding the subject matter of this Action.

2. Attorney work product prepared by or at the direction of counsel after the filing of this Action, in anticipation of litigation, and relating solely to this Action.

3. Drafts of expert reports and disclosures, and communications between counsel and testifying experts, to the extent protected under Federal Rule of Civil Procedure 26(b)(4); and

4. Materials prepared by or for non-testifying experts retained in connection with this Action, to the extent protected under Rule 26(b)(4)(D).

**B. FRE 502(d).** Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other proceeding.

///

///

///

## VI. MODIFICATION

This Stipulated ESI Protocol may be modified by a stipulated order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED.**

Respectfully submitted,

Dated: October 8, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
JAMES M. DAVIS (301636)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
jdavis@bholaw.com

LAW OFFICE OF D. JOSHUA STAUB
D. JOSHUA STAUB (170568)
JAMES C. D. CARR (308118)
13015 W Washington Blvd.
Los Angeles, CA 90066
Tel: 424/216-1776
josh@djoshuastaub.com
james@carrlawgrp.com

*Attorneys for Plaintiff*

Dated: October 8, 2026

BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
KRISTA ENNS (206430)
ANNA TERTERYAN (300368)

By: *s/ Anna Terteryan*
ANNA TERTERYAN

100 Pine Street, Suite 3100
San Francisco, CA 94111
Tel: 628.295-2250
Facsimile: 628.221.5828
kenns@beneschlaw.com
aterteryan@beneschlaw.com

*Attorneys for Defendants*
*VALVOLINE INC. and VALVOLINE INSTANT OIL CHANGE FRANCHISING, INC.*

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: October 8, 2026

BLOOD HURST & O'REARDON, LLP

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

**[PROPOSED] ORDER**

Having reviewed the above Stipulated ESI Protocol, the Court finds good cause exists for entry of this Order.

**IT IS SO ORDERED.**

Dated: October 8, 2026

THE HONORABLE DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE